Filed 5/18/22  Jung v. Kim CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SAM S. JUNG et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> JOON W. KIM et al., <br><br> Defendants and Appellants. | B307413 <br><br> (Los Angeles County Super. Ct. No. BC687833) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Rupert A. Byrdsong, Judge.  Affirmed.

Daniel E. Park Law Corporation and Daniel E. Park for Defendants and Appellants.

Katz Appellate Law and Paul J. Katz for Plaintiffs and Respondents.

Sarah Woo (Woo) and Sam S. Jung (Jung) (collectively, plaintiffs) obtained a default judgment against Joon W. Kim (Kim) and C4 Capital Partners, L.P. (C4) (collectively, defendants). We consider whether the trial court correctly denied defendants' motion, filed well over a year later, to set aside the default judgment on defective service grounds.

## I. BACKGROUND

### A. *The Lawsuit*

Kim was Woo's financial advisor. During the spring of 2012, Kim allegedly persuaded Woo to invest money in C4, a limited partnership for which Kim is a general partner and the agent for service of process. Woo allegedly invested nearly $400,000 in C4 and then transferred $332,300 of that investment to Jung in exchange for a promissory note. C4 allegedly did not report taxes during 2014, 2015, and 2016, and defendants allegedly failed to provide Jung with a Schedule K (a document used to report a partner's share of the partnership earnings, losses, deductions, and credits) to file with his state and federal tax returns. In December 2017, plaintiffs filed an initial complaint against defendants for breach of fiduciary duty and failure to provide financial information.

### B. *Service of the First Amended Complaint*

Plaintiffs maintain they served defendants with the original complaint via substituted service at 1148 Iguala Street, Montebello, CA 90640 (the "Montebello address"), which is both a home address and C4's business address per California records. Plaintiffs later filed a first amended complaint (the operative

2

complaint) in March 2018, and it is service of this document that is at issue in this appeal.[1]

Plaintiffs attempted to serve the operative complaint on defendants at the Montebello address, but they were unsuccessful on four occasions. Plaintiffs then found another address for Kim on Almaden Boulevard in San Jose (the "San Jose address"), where he occupies one unit of a larger building, and verified Kim's association with the unit via United States Postal Service records.

Plaintiffs attempted to serve defendants at the San Jose address 13 times. After three occasions on which a process server attempted to gain access to the lobby unsuccessfully because the door required a code to enter, a process server gained entry in early April 2018 and a "security guard" (as described in the process server's declaration regarding service) refused to provide any information about whether Kim lived in the building. (This service attempt was made before the address was confirmed by the United States Postal Service.) Process servers thereafter

---

[1] Plaintiffs' opening brief does not argue service of the original complaint was defective. After defendants' brief highlighted the absence of any such argument, plaintiffs in their reply brief contend "[t]o the extent that service of the original complaint is relevant, service of this complaint was ineffective and did not provide Kim with actual knowledge." By waiting to raise any issue with service of the original complaint until the reply brief, the point is waived. (*Habitat & Watershed Caretakers v. City of Santa Cruz* (2013) 213 Cal.App.4th 1277, 1292, fn. 6.) We accordingly analyze only whether the first amended complaint was properly served (as that is the only predicate for defendants' request to set aside the default judgment).

made four more attempts at service in early May 2018 and were unable to gain access. Then, on May 10, 2018, a process server gained access to the lobby of the San Jose address and was informed by a "security guard" that visitors are not allowed to remain in the building unless the guard gets approval from a resident. The guard then called Kim's unit, and when there was no answer, the guard agreed (per the process server's declaration of service) "to accept the service on [Kim's] behalf as [an] authorized person." Further attempts at service were still made, however. Three times a process server attempted service but was not able to gain access through the secured lobby doors. Finally, on May 14, 2018, a process server gained entry to the lobby and spoke with a concierge "Brianda A." She tried to contact Kim's apartment, and when she was unsuccessful, said (per the process server's declaration of service) that "she will accept service on behalf of the occupant [Kim]." Once the concierge accepted service, the process server thereafter mailed a copy of the summons and operative complaint to Kim at the same address.

### C. Default, and Defendants' Attempt to Set It Aside

Defendants did not answer or otherwise respond to the operative complaint within the time provided by law to do so. In July 2018, plaintiffs asked the trial court clerk to enter defendants' default, and the clerk did so (after plaintiffs cured a minor problem regarding the names of defendants). The trial court thereafter entered, on September 6, 2018, a default judgment in the amount of $704,694.28 (roughly $10,000 of which was attributable to costs and attorney fees).

Roughly a year and a half later, on April 23, 2020, defendants filed a motion to set aside the entry of default and the

4

default judgment. The motion contended the judgment was void because the summons and operative complaint were improperly served. Defendants contended they never received the summons and complaint by any means and the concierge at the San Jose address was not statutorily authorized, or authorized in fact, to accept service of the documents (which, defendants contended, she never delivered to them). Defendants' motion and an accompanying declaration from Kim asserted Kim was in South Korea at the time of service and defendants first became aware of plaintiffs' lawsuit and the default judgment in April 2020—after Kim "just recently" returned from South Korea and learned a "bank levy was initiated on his and his spouse's bank accounts."

The trial court, at an unreported hearing, denied defendants' motion to set aside the entry of default and default judgment. A minute order memorializing the hearing states the court heard argument, the court and counsel conferred regarding a possible stipulation to set aside the default judgment, and (with the parties unable to reach a stipulation) the court denied the motion "on the grounds set forth in the opposition papers."

## II. DISCUSSION

To set aside the default judgment at such a late date, defendants were required to show service of the operative complaint was defective such that the judgment was void. (*Pittman v. Beck Park Apartments Ltd.* (2018) 20 Cal.App.5th 1009, 1021 (*Pittman*).) The trial court correctly concluded that showing had not been made. After diligently attempting personal service, plaintiffs' process server appropriately resorted to substitute service and validly completed that method of service by (twice) delivering a copy of the operative complaint to the

5

concierge at Kim's address and then mailing a copy of the complaint to the same location. Under *Bein v. Brechtel-Jochim Group, Inc.* (1992) 6 Cal.App.4th 1387 (*Bein*), which we will proceed to discuss in greater detail, that sufficed.

To set aside the judgment against them as void (not merely voidable) under Code of Civil Procedure section 473, subdivision (d), defendants must make a proper showing according to a restricted procedure. A court may consider only evidence appearing on the so-called "judgment roll," which includes the summons, the accompanying affidavit or proof of service, the complaint, the request for entry of default and the entry of the same, and the judgment. (*Pittman*, *supra*, 20 Cal.App.5th at 1020-1021; *OC Interior Services, LLC v. Nationstar Mortgage, LLC* (2017) 7 Cal.App.5th 1318, 1328, fn. 2; see also Code Civ. Proc., § 670, subd. (a).) We keep these limits in mind in assessing defendants' claim that the judgment is void for defective service.

The Code of Civil Procedure permits substitute service of a complaint on an individual, after unsuccessful attempts at personal service are made, by "leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address . . . in the presence of a competent member of the household or a person apparently in charge . . . at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left." (Code Civ. Proc., § 415.20, subd. (b).) Service on a limited partnership is authorized in similar circumstances by "leaving a copy of the summons and complaint during usual office hours in [a general

6

partner's or the agent for service of process's] office or, if no physical address is known, at his or her usual mailing address . . . with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left." (Code Civ. Proc., §§ 415.20, subd. (a); 416.40, subd. (a).)

The Court of Appeal held in *Bein* that substitute service of a lawsuit on an individual and company was appropriately effected when the process server diligently attempted personal service and eventually left a copy of the complaint and summons with the guard of a gated community that included the defendants' address. (*Id.* at 1392, 1394-1395.) Factually, this is what happened in *Bein*: a process server attempted to serve the defendants personally on multiple occasions, was denied access into the gated community by the guard, handed the guard the paperwork to effectuate substituted service (which the guard threw on the ground but later retrieved when the process server drove off), and subsequently mailed the complaint and summons to the defendants' address. (*Id.* at 1390-1391.) The Court of Appeal, explaining its holding, reasoned the guard appropriately qualified as a competent member of the household and someone apparently in charge (as described in the Code of Civil Procedure service statutes) because "[l]itigants have the right to choose their abodes; they do not have the right to control who may sue or serve them by denying them physical access." (*Bein, supra*, 6 Cal.App.4th at 1393; see also *ibid.* [citing with approval New York precedent holding substitute service on an apartment building doorman was statutorily sufficient].)

7

Here, the sources a court may properly consult when determining whether a judgment is void reveal no defect in service. Plaintiffs' process server made plenty of attempts at personal service before resorting to substituted service. (*Bein*, *supra*, 6 Cal.App.4th at 1391-1392.) The concierge at the San Jose Address, much like the gated community guard in *Bein*, qualifies under the pertinent statutes as a person apparently in charge. And there is no dispute, on the record we may consider, that a copy of the operative complaint and summons was mailed to the same address.

The specific counterarguments defendants offer are all unpersuasive. Defendants argue substitute service on the partnership could be made only at the partnership's offices under Code of Civil Procedure section 415.20, but that disregards the language in the statute that permits service at an agent for service of process's "usual mailing address" when a physical address is unknown. Defendants argue *Bein* is distinguishable because the guard in that case had been authorized to control access to the defendants and their residence whereas here Kim never authorized the concierge to control access to him. Kim's assertions, however, are not part of the record a court can consider when deciding whether a judgment is void, and even if they were, defendants still misread *Bein*. It was the defendants' decision to live in a guarded gated community in that case that supplied the "authorization" *Bein* discusses (not any actual person-to-person delegation of authority) (*Bein*, *supra*, 6 Cal.App.4th at 1393), and that same authorization is present here by virtue of Kim's decision to reside in a controlled access building. Finally, defendants argue the guard in *Bein* "actively denied the process server access" and they claim there are no

similar facts here.  To the contrary, the process server's declaration indicates access to the building for "visitors" was permitted only with a resident's permission—which was never forthcoming in the unanswered calls placed to Kim's unit.

## DISPOSITION

The judgment is affirmed.  Plaintiffs are awarded their costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, J.


We concur:



RUBIN, P. J.



MOOR, J.